**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MICHELLE LEWIS**, | **CIVIL ACTION** |
| Plaintiff, | |
| *v.* | **NO. 21-1202-KSM** |
| **COMMISSIONER OF SOCIAL SECURITY,** | |
| Defendant. | |

<u>**MEMORANDUM**</u>

**Marston, J.**                                                                 **April 18, 2022**

In this social security case, Plaintiff Michelle Lewis objects to the Report and Recommendation ("R&R") of Magistrate Judge Scott W. Reid, recommending that we enter judgment in favor of the Commissioner of the Social Security Administration (the "Commissioner") and against Lewis.  For the reasons discussed below, the Court adopts the R&R in its entirety and enters judgment accordingly.

## I.   BACKGROUND

Because the parties are intimately familiar with the facts, which are discussed at length in the Administrative Law Judge's ("ALJ") decision and the R&R, we discuss only those facts that are relevant to our analysis.

### A.   *The ALJ's Decision*

Lewis suffers from, among other things, asthma, diabetes, diabetic neuropathy, and psoriatic arthritis.  (*See* Doc. Nos. 12, 13, Administrative Record ("A.R.") at 188, 216.)  On September 28, 2018, she applied for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405.  (*Id.* at 970.)

Lewis's application was considered by an ALJ, who reviewed her medical records and considered the conclusions and recommendations of multiple medical providers.  (*See* A.R. at 17–29.)  Of relevance here, the ALJ considered the reports of Karena Hammon, N.P. (an independent consulting examiner), Adrienne Kuhlengel, M.D. (Lewis's primary care provider), and Eric Michael, M.D. (the State agency's medical consultant).  (*Id.* at 25–26.)  In his decision, the ALJ credited Dr. Michael's conclusions about Lewis's ability to stand and sit for 6 hours in an 8-hour workday over Hammon and Dr. Kuhlengel's conclusions that she could not stand or sit for more than 2 to 4 hours in an 8-hour workday.  (*See id.*)

Specifically, the ALJ found Hammon's opinion "not entirely persuasive," because "there is no medical support in the record for such extreme limitations on standing and walking, as [Lewis] does not require an assistive device to ambulate, and [her] ranges of motion were all within normal limitations at the time of the consultative examination."  (*Id.* at 26.)  The ALJ relied on Hammon's exam notes, which said that Lewis "appeared to be in no acute distress," had a "normal" stance, was not using any assistive devices, "needed no help changing for the examination" or getting on and off the exam table, "was able to rise from a chair without difficulty," and had "stable and nontender" joints.  (*Id.*)  Hammon also found that Lewis had "no evident joint deformity," that her "strength was 5/5 in the upper *and lower* extremities," that there was "no muscle atrophy of the extremities," and that contemporaneous x-rays revealed "no acute bony abnormality."  (*Id.* (emphasis added).)  The ALJ also found Dr. Kuhlengel's assessment "not persuasive" because, like Hammon's report, it was "not supported by Dr. Kuhlengel's own examination findings" and lacked any evaluation of Lewis's "strength, sensation, weakness, atrophy, etc."  (*Id.*)

Instead of relying on the conclusions of Hammon and Dr. Kuhlengel, the ALJ was persuaded by the assessment of Dr. Michael, which was "consistent with and supported by the relatively benign clinical and laboratory signs and findings and the limited degree of treatment" that Lewis had undergone to date. (*Id.* at 25.)  Relying in part on Dr. Michael's findings, the ALJ concluded that Lewis could perform medium work, and therefore, was "not disabled."  He denied her DIB application on March 16, 2020 (*see id.* at 26–28), and on January 28, 2021, the Social Security Administration Appeals Council denied Lewis's request for review, making the ALJ's decision the agency's final action (*id.* at 1).

### B.      *Judge Reid's R&R*

Lewis then filed a Request for Review in this Court (*see* Doc. No. 1), and the case was referred to Magistrate Judge Reid for a Report and Recommendation.

In her initial briefing to Judge Reid, Lewis argued that the ALJ erred when he found "*no medical support*" for Hammon's conclusions because the ALJ failed to acknowledge Hammon's observation that Lewis had an unsteady gait and dismissed Hammon's opinion even though it was consistent with the opinion of Dr. Kuhlengel.  (*See* Doc. No. 14 at p. 6.)  Judge Reid found this argument unpersuasive.  (Doc. No. 17 at pp. 4–7.)  Of note, Judge Reid acknowledged that it was "not irrelevant that N.P. Hammon's opinions are consistent with Dr. Kuhlenger [sic]" but concluded that "it is more significant that, as the ALJ explained, neither N.P. Hammon's report nor Dr. Kuhlenger's [sic] report is consistent with the examination findings made by its author." (*Id.* at p. 6; *see also id.* ("In other words, there is no apparent medical evidence underlying their findings that Lewis was extremely limited in her mobility.").)  Judge Reid also noted that, in addition to being inconsistent with the underlying objective medical evidence, Hammon and Dr. Kuhlengel's opinions were inconsistent with the findings of neurologist V. Mangeshkumar,

M.D., who examined Lewis on December 19, 2017 and found she had a "normal gait" and "full

motor strength in all four extremities."  (*See id.* at pp. 6–7.)

Lewis also argued that the "appointment of Andrew Saul as a single commissioner of [the

Social Security Administration] who," under 42 U.S.C. § 902(a)(3), "is removable only for cause

and serves a longer term than the President violates separation of powers," thereby rendering

"the decision in this case, by an ALJ and Appeals Council judges who derived their authority

from Mr. Saul, is constitutionally defective."  (Doc. No. 14 at p. 1.)  Judge Reid rejected this

argument as well, finding that even if § 902(a)(3)'s removal provisions are unconstitutional,

Lewis failed to "prove that the decision denying her disability benefits was connected to 42

U.S.C. § 902(a)(3)."  (Doc. No. 17 at p. 14 (analyzing cases and explaining that a claimant must

"show[ ] harm connected to the unconstitutional removal provision").)

For these and other reasons, the R&R recommends that we enter judgment in favor of the

Commissioner and against Lewis (*see* Doc. No. 17).

## II.    STANDARD OF REVIEW

Lewis objects to the R&R, which itself reviews the adequacy of the ALJ's decision to

deny Lewis's application for DIB.  Therefore, two standards of review are relevant to our

analysis.

### A.    *Review of R&R*

The Court reviews *de novo* those portions of the R&R to which a claimant objects.  *See*

28 U.S.C. § 636(b)(1); *see also Weidman v. Colvin*, 164 F. Supp. 3d 650, 653 (M.D. Pa. 2015)

("Although the standard is *de novo*, the extent of review is committed to the sound discretion of

the district judge, and the court may rely on the recommendations of the magistrate judge to the

extent it is deemed proper.").  For portions of the R&R that face no objection, the district court

may use "reasoned consideration" to determine whether to adopt a magistrate judge's opinion. *Handwerk v. Saul*, No. 4:19-CV-01439, 2021 WL 4552266 at *2 (M.D. Pa. Oct. 4, 2021). Although these standards govern our analysis, ultimately "the district court can accept, not accept, or modify in whole or in part, the findings or recommendations made by the magistrate judge," regardless of whether a timely objection has been filed.  28 U.S.C. § 636(b)(1); *Weidman*, 164 F. Supp. 3d 650, 653.

> **B.** **Review of ALJ's Decision**

Because our review is *de novo*, we analyze the ALJ's decision using the same standard that governed the Judge Reid's analysis.

When reviewing a decision to deny benefits, the court looks to whether there is substantial evidence in the record to support the ALJ's decision.  *Brown v. Bowen*, 845 F.2d 1211, 1214 (3d Cir. 1988).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)).  "It is more than a mere scintilla of evidence but may be less than a preponderance."  *Id.*  If an ALJ's findings of fact are supported by substantial evidence, the reviewing court is "bound by those findings," *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d. Cir. 2001), and may not "re-weigh the evidence or impose [its] own factual determinations," *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011).

## III.   DISCUSSION

Lewis argues that substantial evidence does not support the ALJ's evaluation of Hammon's opinion and that the agency's decision is constitutionally defective.

As an initial matter, we note that these arguments do not so much take issue with the R&R as they do restate Lewis's position before Judge Reid.  This is inappropriate. *See O'Brien*

*v. Colvin*, Civil Action No. 12-6690, 2014 WL 4632222, at *2 (E.D. Pa. Sept. 16, 2014)

(explaining that "an objecting party must identify specific errors in the magistrate judge's

analysis without simply rehashing arguments already raised to the magistrate judge," and holding

that "[t]o the extent Plaintiff makes arguments duplicative of those presented to the Magistrate

Judge, the Court deems them improper under the Federal Rules of Civil Procedure and declines

to review them."); *Palmer v. Astrue*, Civil Action No. 09-820, 2010 WL 1254266, at *2 (E.D.

Pa. Mar. 31, 2010) ("It is inappropriate for a district court to address objections previously raised

before a magistrate judge; to do so would defeat any benefit of judicial efficiency gained by the

report and recommendation process." (quotation marks omitted)).

Nevertheless, in an abundance of caution, the Court has conducted a *de novo* review of

the objected-to portions of the R&R and briefly addresses Lewis's primary objections below.

### A.    *Substantial Evidence Supports the ALJ's Evaluation of Hammon*

First, Lewis argues that Judge Reid erred when he found "no apparent medical evidence"

supports Hammon's conclusions because Judge Reid "failed to consider that Ms. Lewis's

treatment notes contain findings of joint pain and fatigue."  (Doc. No. 18 at pp. 2–3 (referencing

medical records, which show that Lewis was diagnosed with psoriatic arthritis and that she

repeatedly told her doctors that she was experiencing joint pain in her legs).)

We find this argument unpersuasive.  To begin with, the question before Judge Reid was

whether substantial evidence supported the ALJ's decision to discount Hammon's opinion, not

whether the ALJ's decision was supported by all the evidence in the record.  To satisfy this

standard, the ALJ must acknowledge contrary evidence and explain why it is being rejected.  *See*

*Coleman*, 494 F. App'x at 254 ("[T]he ALJ may cho[o]se whom to credit but cannot reject

evidence for no reason or for the wrong reason." (quoting *Morales v. Apfel*, 225 F.3d 310, 317

(3d Cir. 2000))); *see also Myers v. Berryhill*, 373 F. Supp. 3d 528, 535 (E.D. Pa. 2019) ("It is the ALJ's exclusive responsibility as the fact-finder to evaluate medical opinions—including opinions from a treating physician—state agency consultants, and medical examiners, and decide whether they are supported by and consistent with the rest of the record."). The ALJ did so here.

He discussed Hammon's opinion and explained exactly why he found it "not entirely persuasive": the objective medical evidence—Lewis's movements during the exam, the results of her strength test, her X-ray results, the lack of any joint abnormality, and the lack of assistive devices—contradicted Hammon's finding that Lewis was unable to sit or stand for more than 2 to 4 hours during the work day. Notably, the ALJ did not state that there was no evidence in the record to support a finding that Lewis is limited to some degree, but instead, that there was "no medical support" for her opinion that *extreme* limitations are necessary. (*See* A.R. at 26 ("[T]here is no medical support in the record *for such extreme limitations on standing and walking*, as [Lewis] does not require an assistive device to ambulate, and [her] ranges of motion were all within normal limitations at the time of the consultative examination." (emphasis added)).)

In his decision, the ALJ acknowledged that Lewis's medical records showed she frequently complained of pain and had been diagnosed with psoriatic arthritis. (*See, e.g.*, A.R. at 20.) Nonetheless, the ALJ acted well within his authority as fact finder when he concluded that such evidence, even if true, did not support Hammon's "extreme limitations on standing and walking" given the other objective medical evidence in the record. *See Coleman*, 494 F. App'x at 254 ("Here, the ALJ determined that Dr. Hartman's opinion (like, also, Dr. D'Eramo's opinion about the extent of Coleman's exertional limitations) was not adequately supported by objective medical examination findings, and she chose instead to credit Dr. Alexander's opinion on this

issue.  We agree with the District Court that the ALJ gave an adequate explanation for her

decision." (internal citation omitted)); *Myers*, 373 F. Supp. 3d at 536 (noting that a "claimant's

statements alone are not enough to establish a physical or mental impairment" and explaining

that "[i]t is the ALJ's responsibility to determine the extent to which a claimant is accurately

stating his degree of pain and level of disability")).

Second, Lewis takes issue with Judge Reid's reference to Dr. Mangeshkumar's opinions,

arguing that the ALJ selectively pulled those opinions from the record.  (Doc. No. 18 at pp. 2–3.)

Lewis relies on *Yurt v. Colvin*, a nonbinding Seventh Circuit opinion that states an ALJ is

forbidden from "cherry-picking" evidence.  (*Id.*)  *See Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir.

2014) ("Seizing upon the GAF of 60 to conclude that Yurt was not substantially impaired is

precisely the type of cherry-picking of the medical record that we have repeatedly forbidden.").

But even if *Yurt* were binding on this Court, its holding is inapplicable here because there is no

evidence that the ALJ cherry-picked favorable evidence, while ignoring unfavorable evidence.

In sum, Judge Reid did not err when he found that substantial evidence supports the

ALJ's decision to discredit Hammon's conclusions.[1]

---

[1] Lewis also argues that Hammon's opinion is supported by Dr. Kuhlengel's conclusions.  But
this argument is not an objection to the R&R—it merely repeats an argument considered and rejected by
Judge Reid.  *See O'Brien*, 2014 WL 4632222, at *4 ("To now re-address these identical arguments would
duplicate the thorough efforts of the Magistrate Judge and defeat any judicial efficiency gained by the
report and recommendation process.  As this Court finds no clear error or manifest injustice in the R&R,
we decline to consider those portions of the Objections that duplicate the Request for Review.").  Because
we agree with Judge Reid's analysis, we do not reconsider this argument here.  *See Myers*, 373 F. Supp.
3d at 531 ("The Court has conducted a *de novo* review of the objected-to portions of the Report and
Recommendation and finds that Plaintiff's objections are merely restatements of arguments previously
made to, and addressed by, Magistrate Judge Saporito.  Because the Court agrees with Magistrate Judge
Saporito's analysis and conclusions, it is hereby ordered that . . . the Report and Recommendations of
Magistrate Judge Joseph F. Saporito, ECF No. 17, is adopted in its entirety.").

### B.      Constitutional Authority

Next, Lewis argues that the ALJ's decision is constitutionally defective because the ALJ and Appeals Council judges received their authority from Commissioner Andrew Saul, whose appointment violated separation of powers.  (Doc. No. 18 at p. 3.)  This is a restatement of the argument presented to Judge Reid.  (*See* Doc. No. 14 at pp. 9–10.)  As mentioned above, because this Court agrees with Judge Reid's analysis and conclusions, we do not reconsider those arguments in full here.  We will, however, briefly address Lewis's argument that Judge Reid erred when he found Lewis was required to show that she was specifically harmed by the constitutional infirmity.  (*See* Doc. No. 18.)  According to Lewis, because "neither the ALJ nor the Appeals Council had a lawful delegation of authority to adjudicate [her] claim, . . . *Collins* [*v. Yellen*] suggests that harm should be presumed."  (*Id.* at p. 3.)  This misreads the Supreme Court's holding in *Collins* and other cases on the issue.

*Collins* built on the Supreme Court's holding in *Seila Law LLC v. Consumer Financial Protection Bureau.*  In *Seila Law LLC*, the Court held that the Dodd-Frank Act violated separation of powers to the extent that it vested a single director of the Consumer Financial Protection Bureau with a five-year term and made him removable by the President only for cause.  140 S. Ct. 2183, 2208–09 (2020) (concluding that "the CFPB's leadership by a single independent Director violates the separate of powers" because it insulated the director from removal at will).  However, because the "only constitutional defect . . . [wa]s the Director's insulation from removal," the Court refused to strike down the entire Act, finding instead that the "Director's removal protection [was] severable from the [Act's] other provisions."  *Id.* at 2211.

In *Collins*, the Court found unconstitutional a similar removal provision in the Housing and Economic Recovery Act, which limited the President's ability to remove the director of the

Federal Housing Finance Agency.  141 S. Ct. 1761, 1784 (2021) ("A straightforward application of our reasoning in *Seila Law* dictates the result here. The FHFA (like the CFPB) is an agency led by a single Director, and the Recovery Act (like the Dodd-Frank Act) restricts the President's removal power.").  The plaintiffs argued that because the Act unconstitutionally limited the President's ability to remove the agency's director, actions taken by the agency under that director's tenure were void.  *Id.* at 1787 ("In support of their request, [the plaintiffs] contend that the third amendment was adopted and implemented by officers who lacked constitutional authority and that their actions were therefore void *ab initio*.").  The Supreme Court disagreed, finding that such an argument was "neither logical nor supported by precedent."  *Id.*  The Court emphasized that "[a]ll the officers who headed the FHFA during the time in question were properly *appointed*" and "[a]lthough the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office."  *Id.*  "As a result, there [wa]s no reason to regard any of the actions taken by the FHFA in relation to the third amendment as void."  *Id.*  The Court, however, refused to find that a plaintiff could never show compensable harm resulting from an unconstitutional removal provision.  *Id.* at 1788–89.

Here, Lewis attempts to distinguish *Collins* by arguing that in *Collins* the FHFA officers "exercised lawfully and constitutionally delegated powers," whereas here, "neither the ALJ nor the Appeals Council had a lawful delegation of authority to adjudicate [her] claim" because their powers were delegated from the Commissioner, who was removable only for cause in violation of separation of powers.  (*See* Doc. No. 18 at pp. 3–4 ("It follows that if Mr. Saul unconstitutionally held office on the date that Mr. Biden assumed the office of president, Mr. Saul's appointment as Commissioner was unconstitutional and his authority, and authority

delegated throughout the Administration was unconstitutional.  As the decision in the present matter was issued while Mr. Saul unconstitutionally occupied the office of Commissioner, any official determination that stemmed from authority that Mr. Saul delegated, including authority wielded by the ALJ and the Appeals Council, was unconstitutional as well.").

But the Court in *Collins* necessarily rejected a similar leap in logic when it found the directors of the FHFA were properly appointed despite the unconstitutional limit on the President's ability to remove those directors.  And because they were properly appointed, they had the authority to act as they did and those actions were not void *ab initio*.  So too here.

Even if the Social Security Act's provisions limiting the removal of an appointed Commissioner are unconstitutional, that does not mean that the Commissioner's appointment— or any actions taken pursuant to that appointment—are unconstitutional.  And because the removal provision does not taint the Commissioner's authority, neither does it taint delegations of that authority to the ALJ and Appeals Council or actions taken pursuant to that delegated authority.  *See Brian S. L. v. Kijakazi*, Civil Action No. 1:21cv00423 (AJT/JFA), 2021 WL 6774946, at *22 (E.D. Va. Dec. 10, 2021) ("Plaintiff argues that . . . the ALJ and Appeals Council lacked 'a lawful delegation of authority under which to adjudicate and decide this disability claim.'  Plaintiff offers no support for this proposition beyond a conclusory argument that the challenged removal statute somehow taints the overall authority of the Commissioner to determine eligibility for social security benefits.  As the *Collins* Court recognized, however, there is a distinction between the exercise of authority that an official does not possess and the exercise of proper constitutional authority while subject to unlawful removal conditions.  The former is presumptively void while the latter requires a showing of actual and causal harm.  Here, there is no indication that either Commissioner Saul or the ALJ or Appeals Council

11

members exercising authority on his behalf were appointed in violation of the Appointments Clause or that they exceeded the scope of their authority." (citations omitted)).

Because Lewis has not shown that the Commissioner, the ALJ, or the Appeals Council judges were appointed in violation of the Appointments Clause, Lewis must show that she was harmed by the President's limited ability to remove the Commissioner.[2]  She has not done so.[3]

## IV.    CONCLUSION

For those reasons, the Court adopts the R&R in full.  The decision of the Commissioner is affirmed and final judgment is entered in favor of the Commissioner and against Lewis.

---

[2] Lewis argues that harm must be presumed in this case under the Third Circuit's decision in *Cirko ex rel. Cirko v. Commissioner of Social Security*.  (Doc. No. 18 at p. 3 n.1 (arguing that harm is presumed "when structural constitutional claims involving separation of powers are concerned").)  But *Cirko* involved a constitutional challenge under the Appointments Clause; in other words, the plaintiffs argued that the ALJ and Appeals Council judges were not properly *appointed*.  948 F.3d 148, 154 (3d Cir. 2020).  Here, by contrast, the unconstitutional provision is the *removal* provision.  Under *Collins*, a plaintiff raising such a challenge must demonstrate specific harm.

[3] Lewis seems to argue that she was specifically harmed by the removal provision because but for that provision "President Biden would have terminated [Commissioner] Saul upon inauguration" and before the Appeals Council issued its decision in this case.  (*See* Doc. No. 18 at pp. 4–5.)  Because President Biden was unable to do so, Lewis reasons, Commissioner "Saul unconstitutionally held office on the date that Mr. Biden assumed the office of president, Mr. Saul's appointment as Commissioner was unconstitutional, and his authority, and authority delegated throughout the Administration was unconstitutional."  (*Id.*)  Lewis pulls this argument from the R&R, which proposed it as one hypothetical way that Lewis may have argued that there was "a legitimate nexus between an agency action and an illegal removal provision."  (Doc. No. 17 at p. 14 n.3.)  But as Judge Reid notes, this "argument [wa]s not before the Court, because Lewis did not raise it."  (*Id.*)  Because Lewis did not raise this argument in her initial briefing, we cannot find that Judge Reid erred when he found it was not before him.